# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| REGINALD C. HOWARD, | )<br>) 2:08-cv-00728-RCJ-GWF |
| Plaintiff, | ) |
| vs. | )<br>) **ORDER** |
| HOWARD SKOLNIK, DIRECTOR, DWIGHT NEVEN, WARDEN, HENSON J., AWP, BACA I, AWO, JULIO CALDERIN, CHAPLAIN, DWAYNE DEAL, CASEWORKER, PAPPAS C/O, AND JOHN DOES/JANE DOES, *et al.*, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## INTRODUCTION

This matter comes before the Court on Plaintiff's Motion to Dispense with the Requirement of Security (#11), Motion for Order to Show Cause why Preliminary Injunction and Temporary Restraining Order should not be issued (#12), and Motion for Preliminary Injunction (#13). The Court has considered Plaintiff's Motions and the pleadings on file on behalf of all parties. IT IS HEREBY ORDERED that Defendant's Motion to Dispense with the Requirement of Security, Motion for Order to Show Cause why Preliminary Injunction and Temporary Restraining Order should not be issued, and Motion for Preliminary Injunction are *denied*.

**BACKGROUND**

Plaintiff Reginald C. Howard is a convicted felon who is in the custody of the Nevada Department of Corrections and is currently housed in High Desert State Prison. (#15 at 2). He brought this civil rights action in the United States District Court, District of Nevada, on June 19, 2008. *Id.* His complaint alleges violations of his First, Eighth, and Fourteenth Amendments. *Id.* Specifically, he brings the complaint against Defendants Howard Skolnik, Director, Dwight Neven, Warden, Henson J, AWP, Baca I, AWO, Julio Calderin, Chaplain, Dwayne Deal, Caseworker, Pappas C/O, and John Does/ Jane Does, et al. Plaintiff brought these immediate Motions on August 13, 2008, seeking to enjoin the Nevada Department of Corrections from cancelling the Nation of Islam prayer service conducted in English. *Id.*; #12, 13.

## DISCUSSION

**I.     Preliminary Injunction Standard.**

A preliminary injunction will be granted if the requesting party demonstrates either: (1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits and the balance of hardships tips heavily in favor of the requesting party. *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1155 (9th Cir. 2006); *Sony Computer Entertainment Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1025 (9th Cir. 2000). A movant with questionable claims does not meet the likelihood of success criterion. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 340 (1999). The right to the relief of a preliminary injunction must be both clear and unequivocal before a court will grant an injunction. *See Schrier v. University of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

**II.    Irreparable Injury to Plaintiff Not Present in This Case.**

Plaintiff does not produce sufficient evidence in his motion that he will suffer irreparable harm without the granting of this TRO or Preliminary Injunction. A court should grant an injunction

1  only if a right has been violated or clearly is being violated. *Federal Trade Comm'n v. Evans Prods.*
2  *Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985).

3  In this case, Plaintiff argues that his rights to practice his religion are being violated. (#12).
4  After his worship service for the Nation of Islam was combined with the general Muslim service,
5  whose practices vary from those of the Nation of Islam, Plaintiff asserts a violation of his first
6  amendment religious freedom. (#12 at 6). Defendant responds that Plaintiff's rights are not being
7  violated as he may attend the Muslim services on a weekly basis or choose to worship on his own.
8  (#15 at 3). In failing to cite to specific harm through factual allegations, Plaintiff has not shown any
9  irreparable harm, but a preference for a separate service for his religious sect.

10  Courts have rejected that view that prison personnel are obligated, under RLUIPA, to provide
11  group services when inmates request them. *See Adkins v. Kaspar*, 393 F.3d 559 (5th Cir.2004), *cert.*
12  *denied*, 545 U.S. 1104 (2005) (holding that the prison did not impose a substantial burden on his
13  religious exercise by not accommodating his request to congregate with other members of his faith).
14  In a similar case, *Muhammad v. City of New York Department of Corrections*, 904 F. Supp. 161, 167
15  (S.D.N.Y. 1995), the court held that the First Amendment did not require accommodation of a
16  Nation of Islam inmate's request for separate services from other Muslims. Without establishing
17  that Defendants infringed upon his First Amendment right as a matter of law, Plaintiff cannot
18  establish that he is suffering or has suffered irreparable harm by the combination of the Muslim
19  services between sects.

20  **III.     Strong Likelihood of Success on Merits Not Present in This Case.**

21  Plaintiff has failed to establish in his Motion a strong likelihood on success on the merits.
22  Prisoners do retain their First Amendment rights which include the right to free exercise of religion.
23  *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). To this end, inmates enjoy the privilege
24  of a "reasonable opportunity" to worship and to have clergy or spiritual leaders visit them. *See Cruz*

1  *v. Beto*, 405 U.S. 319, 322 (1972); *Glittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970).  The
2  limitations on this free exercise arise from the fact of incarceration and penological objectives. *See*
3  *McElyea v. Babbit*, 833 F.2d 196, 198 (9th Cir. 1987).

4        RLUIPA provides that "[n]o [state or local] government shall impose a substantial burden
5  on the religious exercise of a person residing in or confined to an institution," unless it meets the
6  strict scrutiny standard of furthering a compelling governmental interest by the least restrictive
7  means possible. 45 U.S.C. § 2000cc-1(a)(1)-(2).  The Act replaced the penological interest standard
8  with the strict scrutiny standard. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005); *see*
9  *also Cutter*, 554 U.S. 717.  The United States Supreme Court had set forth the *Turner* factors to
10 ascertain the reasonableness of a prison regulation: (1) a valid, rational connection between the
11 regulation and the legitimate governmental interest; (2) the existence of an alternative means of
12 exercising the right; (3) the impact of accommodation on the guards and other inmates as well as the
13 allocation of prison resources; (4) the absence of ready alternatives which supports reasonableness
14 of the government regulation. *Turner v. Safley*, 482 U.S. 78, 89–90 (1983).  The effect of RLUIPA
15 on the *Turner* test is simply the insertion of the burdens of the strict scrutiny standard: to determine
16 if the intrusion is the least restrictive means of accomplishing the compelling government interest.
17 The Supreme Court has considered RLUIPA and held the Act does not eliminate the deference given
18 to prison administrators who are charged with running state institutions. *Cutter v. Wilkinson*, 544
19 U.S. 709 (2005).

20       In the Ninth Circuit, a plaintiff bringing a RLUIPA claim must first show a "substantial
21 burden" on his exercise of religion. *Shakur v. Schriro*, 514 F.3d 878 2008 WL 185496 (9th Cir.
22 2008).  This would be met when the state denies a religious benefit that would induce an individual
23 to modify his behavior and violate the tenets of his faith. *Id.*  In the event the state does create a
24 substantial burden, it must then show that the burden meets the requirements of a strict scrutiny

1 analysis. The plaintiff bears this burden of demonstrating a *prima facie* claim of prison policies or actions that present a substantial burden on the exercise of his religious beliefs. *Warsoldier*, 418 F.3d at 994. Upon meeting this burden, the burden shifts to the prison to prove that it both furthers a compelling government interest and employs the least restrictive means possible. *Id.* at 995.

In this instance, Plaintiff alleges that in cancelling the only English speaking Nation of Islam service places a substantial burden on the exercise of his religious beliefs. (#12). He considers himself forced to attend a Muslim service that mocks and ridicules his beliefs and does not include readings which are necessary for the practice of his religion. *Id.* at 1–2. Defendant counters that it does not have the time, space, and staff to comply with all requests from prisoners of the numerous faith groups in the system. (#15 at 8).

Defendant asserts that Plaintiff has not been prevented from attending the Friday weekly Muslim services, which includes an opportunity for him as a member of the Nation of Islam to participate. *Id.* at 9. Although he argues that his religion is different in grave respects from the Muslim service, courts have rejected the view that under RLUIPA, prisons must provide group services when requested by inmates. *See Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004), *cert. denied*, 545 U.S. 1104 (2005). In a similar case in Missouri, plaintiff brought a claim of RLUIPA violation against the Missouri Department of Corrections when it refused to provide separate services for Shiite Muslims from other Muslims due to a tremendous burden on the system. That decision was deemed valid by the court. *Izquierdo v. Crawford*, No. 1:05CV192, 2007 WL 2873210 (E.D. Mo. Sept. 26, 2007). Accordingly, in this case Defendant argues that because Plaintiff is permitted to practice his Muslim faith, this exercise is not unduly burdened by group Muslim worship with other Islamic sects. (#15 at 10).

Plaintiff has not shown a strong likelihood of success on the merits of his Motion because the denial of the prison to designate separate worship time for Nation of Islam Muslims does not

place a substantial burden on his ability to practice his faith.  Without a demonstration of a substantial burden, the Court does not have to apply the strict scrutiny test.  Plaintiff's RLUIPA rights and First Amendment rights have not been demonstrably violated in this case.  Therefore, Plaintiff's Motions are *denied*.

### IV. Balance of Hardships Does Not Tip in Plaintiff's Favor in This Case.

In essence, the hardship on the Defendants outweighs the hardship on Plaintiff in this case. The hardship must balance out in favor of the plaintiff in order to grant injunctive relief for the test. *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1155 (9th Cir. 2006); *Sony Computer Entertainment Am., Inc. v. Bleem, LLC*, 214 F.3d 1022, 1025 (9th Cir. 2000).

Plaintiff has not demonstrated that he would be inhibited from practice of his religion without this Court's injunctive relief.  He would still be permitted to attend weekly Muslim services on Fridays and worship on his own. (#15 at 11). Defendants would bear the hardship of needing to make separate accommodations and facilities available for members of all sects if they must do so in this case.  The prison's time and money would be channeled away from the primary business of running a well-functioning prison to make such accommodations, and jeopardize the operations of the prison in doing so. (#15 at 10–11). Accordingly, Plaintiff's Motions are *denied*.

### V. The Granting of the Preliminary Injunction Is Not in the Public Interest.

The public interest is better served when prisons are run efficiently and operated by prison officials. *Turner*, 482 U.S. 78, 85 (1987).  Plaintiff argues that the public interest is best served when it is not burdened with the need to pay for defense against a civil action. (#12 at 7). Defendant counters that interference with the daily operations of Nevada's largest prison is not in the public interest.

. . .

Given that prisons are run by experts whose job requires them to safely and efficiently operate the prisons, and that no substantial burden has been placed on Plaintiff's practice of his religion, granting of the preliminary injunction is not in the public interest in this case.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Motion to Dispense with the Requirement of Security (#11), Motion for Order to Show Cause why Preliminary Injunction and Temporary Restraining Order should not be issued (#12), and Motion for Preliminary Injunction (#13) are *denied*.

DATED:   October 8, 2008

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

(nk)_____