# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| Reginald C. Howard, | ) | Case No.:  2:08-cv-00728-GMN-GWF |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Howard Skolnik, Director (NDOC), | ) | |
| Dwight Neven, Warden, I. Baca, Julio | ) | |
| Calderin, Chaplain, Dwayne Deal, | ) | |
| Caseworker, Pappas, C/O, AWP J. Henson,| ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Before the Court is Plaintiff's Motions for Temporary Restraining Order ("TRO") (ECF No. 68), Preliminary Injunction ("PI") (ECF No. 69) and Order to Show Cause (ECF No.70).  Defendants filed Responses to the three motions on October 1, 2010 (ECF Nos. 79, 80 & 81).  Plaintiff filed his Reply on October 12, 2010 (ECF No. 82).

The Court hereby DENIES Plaintiff's Motions.

## FACTS AND BACKGROUND

Plaintiff, Reginald C. Howard, is a convicted felon who is in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed in Southern Desert Correctional Center ("SDCC") in Indian Springs, Nevada.  (ECF No. 15 at 2 & 79 at 2).  Plaintiff brought this civil rights action in the United States District Court, District of Nevada, on June 19, 2008. (ECF No. 15).  His complaint alleges violation of his First, Eighth, and Fourteenth Amendments.  *Id.*  Specifically, he brings the complaint against Defendants Howard Skolnik, Director, Dwight Neven, Warden, Henson J, AWP,

Baca I, AWO, Julio Calderin, Chaplain, Dwayne Deal, Caseworker, Pappas C/O, and John Does/ Jane Does, et al.  Defendants filed a Motion to Dismiss or in the alternative Motion for Summary Judgment (ECF No. 23) which was granted by the Honorable Robert C. Jones on January 22, 2009 (ECF No. 33).

Plaintiff appealed the Summary Judgment to the Ninth Circuit Court of Appeals. (ECF No. 35).  The Court of Appeals upheld part of the summary judgment, but vacated two issues and remanded them back to the district court.  *Howard v. Skolnik*, 372 Fed. Appx. 781 (9th Cir. 2010).  The two issues remanded were:  (1) whether the NDOC must return certain tapes belonging to Plaintiff, and (2) whether Defendants violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) by creating a substantial burden on Plaintiff's ability to practice his religion.  *Id.* at 782-83.  The Court of Appeals found that Plaintiff asserted sufficient evidence of a substantial burden on his religion because he sincerely believed that praying in English is required to maintain his spirituality. *Howard*, 372 Fed. Appx. at 782.

However, Plaintiff's instant motions request only that the Defendants be enjoined from having any physical contact with him and requests that the Court prevent Defendants from harassing and retaliating against Plaintiff. (ECF No. 68 at 1-2). Plaintiff also seeks to enjoin the NDOC from cancelling the Nation of Islam prayer service and claims that he is being forced to worship under a custom or tradition that is foreign to his belief and language.  *Id.*

## DISCUSSION

### I.    Temporary Restraining Order and Preliminary Injunction

#### A.    Legal Standard

Under Fed. R. Civ. P. 65(b), plaintiff must make a showing that immediate and irreparable injury, loss or damage will result to plaintiff if the order is not issued to

support their motion for a temporary restraining order.  Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.  *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("The standard for issuing a preliminary injunction is the same as the standard for issuing a temporary restraining order.").  The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

The Ninth Circuit in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "*likely*," not just possible.  *Winter v. NRDC*, 129 S. Ct. 365, 37476 (2008) (rejecting the Ninth Circuits alternative "sliding scale" test).  The Ninth Circuit has explicitly recognized that its "possibility" test was "definitively refuted" by *Winter*, and that "[t]he proper legal standard for preliminary

1    injunctive relief requires a party to demonstrate 'that he is likely to succeed on the

2    merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

3    that the balance of equities tips in his favor, and that an injunction is in the public

4    interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting

5    *Winter*, 129 S. Ct. at 374) (reversing a district court's use of the Ninth Circuit's pre-

6    *Winter*, "sliding-scale" standard and remanding for application of the proper standard).

7         A recent Ninth Circuit ruling relying largely on the dissenting opinion in *Winter*

8    parsed the language of *Winter* and subsequent Ninth Circuit rulings and ruled that the

9    sliding scale test remains viable when there is a lesser showing of likelihood of success

10   on the merits amounting to "serious questions," but not when there is a lesser showing of

11   likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, No. 09-

12   35756, 2010 WL 2926463, at *5–7 (9th Cir. July 28, 2010).  As a preliminary matter, to

13   the extent this interpretation of *Winter* is inconsistent with that in *Selecky*, *Selecky*

14   controls. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding

15   that, in the absence of an intervening Supreme Court decision, only the en banc court

16   may overrule a decision by a three-judge panel).

17        In any case, the Supreme Court has made clear that a movant must show both

18   "that he is *likely* to succeed on the merits [and] that he is *likely* to suffer irreparable harm

19   in the absence of preliminary relief . . . ." *Winter*, 129 S. Ct. at 374 (citing *Munaf v.

20   Geren,* 128 S. Ct. 2207, 2218–19 (2008); *Amoco Prod. Co. v. Gambell,* 480 U.S. 531,

21   542 (1987); *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311–12 (1982)) (emphases

22   added).  To satisfy *Winter*, the movant must show that he is "likely" to succeed on the

23   merits.  To the extent the *Cottrell* court meant to imply that its "serious questions"

24   standard was a lesser standard than "likely," it is inconsistent with *Winter* and *Selecky*.

25   The Court must reconcile the cases by interpreting the *Cottrell* "serious questions"

requirement to be in harmony with the *Winter/Selecky* "likelihood" standard, not as being in competition with it.  The movant must therefore show that there are serious questions as to the merits of the case such that success on the merits is likely.  A claim can be weaker on the merits if it raises "serious questions" and the amount of harm the injunction will prevent is very great, but the chance of success on the merits cannot be weaker than "likely."

**B.      Analysis of Plaintiff's Likelihood of Success on the Merits**

Plaintiff has failed to establish a strong likelihood of success on the merits. Prisoners do retain their First Amendment rights which include the right to free exercise of religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  To this end, inmates enjoy the privilege of a "reasonable opportunity" to worship and to have clergy or spiritual leaders visit them.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Gittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970).  The limitations on this free exercise arise from the fact of incarceration and penological objectives.  *See McElyea v. Babbit*, 833 F.2d 196, 198 (9th Cir. 1987).

RLUIPA provides that "[n]o [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless it meets the strict scrutiny standard of furthering a compelling governmental interest by the least restrictive means possible.  45 U.S.C. § 2000cc-1(a)(1)-(2).  The Act replaced the penological interest standard with the strict scrutiny standard. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005); *see also Cutter v. Wilkinson*, 544 U.S. 709, 717 (2005).  The United States Supreme Court had set forth the Turner factors to ascertain the reasonableness of a prison regulation: (1) a valid, rational connection between the regulation and the legitimate governmental interest; (2) the existence of an alternative means of exercising the right; (3) the impact of

accommodation on the guards and other inmates as well as the allocation of prison resources; (4) the absence of ready alternatives which supports reasonableness of the government regulation. *Turner v. Safley*, 482 U.S. 78, 89–90 (1983).  The effect of RLUIPA on the Turner test is simply the insertion of the burdens of the strict scrutiny standard: to determine if the intrusion is the least restrictive means of accomplishing the compelling government interest.  The Supreme Court has considered RLUIPA and held the Act does not eliminate the deference given to prison administrators who are charged with running state institutions. *Cutter*, 544 U.S. 709.

In the Ninth Circuit, a plaintiff bringing a RLUIPA claim must first show a "substantial burden" on his exercise of religion. *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008).  This would be met when the state denies a religious benefit that would induce an individual to modify his behavior and violate the tenets of his faith. *Id.*  In the event the state does create a substantial burden, it must then show that the burden meets the requirements of a strict scrutiny analysis.  The plaintiff bears this burden of demonstrating a prima facie claim of prison policies or actions that present a substantial burden on the exercise of his religious beliefs. *Warsoldier*, 418 F.3d at 994.  Upon meeting this burden, the burden shifts to the prison to prove that it both furthers a compelling government interest and employs the least restrictive means possible. *Id*. at 995.

Plaintiff is no longer housed at the same facility (HDSP), and is now at a different facility (SDCC) where Nation of Islam services are provided. Accordingly, Plaintiff is requesting reinstatement of Nation of Islam services in English at his former housing facility (HDSP) and an Order  preventing his new housing facility (NDCC) from cancelling the Nation of Islam services.

It is important to note that the remand by the Court of Appeals does not, however,

guarantee Plaintiff's success.  Summary judgment is still proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Only when reasonable minds could differ on the material facts at issue, is summary judgment not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  The Court of Appeals remanded for further proceedings because the Defendants did not submit any evidence suggesting that the prison's decision to cancel the prayer service was based on a legitimate correction goal. *Id*. at 782-83.  Therefore, while Plaintiff's ability to produce evidence of a substantial burden on his religion is sufficient to survive summary judgment, it is not automatically enough for the court to deem Plaintiff's success likely and grant a temporary restraining order and preliminary injunction.

### C.    Analysis of Irreparable Harm to Plaintiff

Plaintiff does not produce sufficient evidence in his motion that he will suffer irreparable harm without the granting of a TRO or Preliminary Injunction.  A court should grant an injunction only if a right has been violated or clearly is being violated. *F.T.C. v. Evans Products Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985).

Courts have rejected the view that prison personnel are obligated, under RLUIPA, to provide group services when inmates request them.  *See Adkins v. Kaspar*, 393 F.3d 559 (5th Cir.2004), *cert. denied*, 545 U.S. 1104 (2005) (holding that the prison did not impose a substantial burden on his religious exercise by not accommodating his request to congregate with other members of his faith).  In a similar case, *Muhammad v. City of New York Dept. of Corrections*, the court held that the First Amendment did not require accommodation of a Nation of Islam inmate's request for separate services from other Muslims.  904 F. Supp. 161, 167 (S.D.N.Y. 1995).

In this case, Plaintiff argues that his rights to practice his religion are being violated because the prayer service at HDSP was cancelled. However, Plaintiff is now housed at SDCC and has made no complaints about the prayer services at his new location. Plaintiff has not provided any facts permitting an inference that that the prayer service at his current location is going to be cancelled. Temporary restraining orders and preliminary injunctions are issued to keep the status quo until either a hearing can be held on the issue or to prevent irreparable loss of rights prior to judgment. *See Granny Goose Foods, Inc.*, 415 U.S. at 439; s*ee also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). In failing to cite to any specific current harm or reasonable expectation of harm through factual allegations, Plaintiff has not demonstrated any irreparable harm.

Plaintiff also argues that he is irreparably harmed by Defendants being allowed to search, take and remove items from his cell. Specifically, Plaintiff argues that Defendants took some legal documents from his cell and Plaintiff had to rewrite the documents. However, Plaintiff has now submitted all the documents to the court of which he complained were taken from him. Therefore, while Plaintiff has alleged a purported harm, he has not shown how he has been irreparably harmed by this incident. The remainder of Plaintiff's suit against the Defendants is still being litigated and Plaintiff has been provided a sufficient forum to address his grievances.

### D.    Balance of Hardships Analysis

The hardship must balance out in favor of the plaintiff in order to grant injunctive relief for the test. *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1155 (9th Cir. 2006); *Sony Computer Entertainment America, Inc. v. Bleem, LLC*, 214 F.3d 1022, 1025 (9th Cir. 2000).

Plaintiff has not demonstrated that he would be inhibited from practice of his

religion without this Court's injunctive relief.  In fact, Plaintiff appears to have obtained relief as he was transported and is being held at a facility which provides the religious services he seeks. Furthermore, he has made no complaints about the worship services at SDCC.  Defendants would bear the hardship of needing to make separate accommodations and facilities available for members of all sects if they must do so in this case at a location where Plaintiff is not housed.  The prison's time and money would be channeled away from the primary business of running a well-functioning prison to make such unnecessary accommodations, and jeopardize the operations of the prison in doing so.  Accordingly, the hardships does not balance out in Plaintiff's favor.

### E.    Public Interest Analysis

The public interest is better served when prisons are operated by prison officials and run efficiently. *Turner*, 482 U.S. 78, 85 (1987).  Given that Plaintiff is no longer housed at HDSP and is being provided access to religious services at his new location, Plaintiff has failed to demonstrate that granting of a preliminary injunction based upon the facts presented in this case is not cost-effective and not in the public interest.

For the reasons stated above, the Court therefore DENIES Plaintiff's Motions for Temporary Restraining Order ("TRO") (ECF No. 68) and Preliminary Injunction ("PI") (ECF No. 69) without prejudice.

## II.    Order to Show Cause

An order to show cause imposes upon a party the obligation to appear in court and explain why the court should or should not grant some relief.  *See* Black's Law Dictionary, 9th ed. (2009).  Injunctions and restraining orders are extraordinary remedies that may only be awarded upon a clear showing that Plaintiff is entitled to such relief. *See Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865,138 (1997).  For the reasons stated above the court finds that Plaintiff has not demonstrated that his request

for a Temporary Restraining Order or Preliminary Injunction should be granted. Therefore, the court DENIES Plaintiff's Motion for Order to Show Cause (ECF No. 70) without prejudice.

## **<u>CONCLUSION</u>**

Plaintiff's Motions are DENIED without prejudice.  The Plaintiff may re-assert and the Court will re-entertain Plaintiff's Motions if he is transported back to HDSP or if he properly asserts violations related to his current placement at SDCC.

DATED this 1st day of December, 2010.

_____
Gloria M. Navarro
United States District Judge