UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| REGINALD C. HOWARD | ) | Case No.: 2:08-cv-00728-GMN-GWF |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| HOWARD SKOLNIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**INTRODUCTION**

Before the Court is Plaintiff Reginald C. Howard's Motion for Summary Judgment (ECF No. 90). Defendants Howard Skolnik, Dwight Neven, James Henson, Isidro Baca, Julio Calderin, Dwayne Deal, and Ryan Pappas filed a Response (ECF No. 100).

Also before the Court is Defendants' Motion for Summary Judgment (ECF No. 99). Plaintiff filed a Response (ECF No. 103).

Plaintiff has also filed a Motion to Strike Defendants' Motion for Summary Judgment and Defendants' Response to Plaintiff's Motion for Summary Judgment (ECF No. 102). Defendants filed a Response (ECF No. 104.)

**FACTS AND BACKGROUND**

Plaintiff, Reginald C. Howard, is a convicted felon who is in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed in Southern Desert Correctional Center ("SDCC") in Indian Springs, Nevada. (ECF No. 15 at 2 & 79 at 2). Plaintiff brought this civil rights action in the United States District Court, District of Nevada, on June 19, 2008. (ECF No. 15). His complaint alleges violations of his First, Eighth, and Fourteenth Amendment rights. *Id.* Specifically, he brings the complaint against Defendants Howard Skolnik, Director, Dwight Neven, Warden, Henson J, AWP, Baca I, AWO, Julio Calderin,

Chaplain, Dwayne Deal, Caseworker, Pappas C/O, and John Does/Jane Does, et al. Defendants previously filed a Motion to Dismiss or in the alternative Motion for Summary Judgment (ECF No. 23) which was granted by the Honorable Robert C. Jones on January 22, 2009 (ECF No. 33).

Plaintiff appealed the Summary Judgment to the Ninth Circuit Court of Appeals. (ECF No. 35). The Court of Appeals upheld part of the summary judgment, but vacated two issues and remanded them back to the district court. *Howard v. Skolnik*, 372 Fed. Appx. 781 (9th Cir. 2010). The two issues remanded were: (1) whether the NDOC must return certain tapes belonging to Plaintiff, and (2) whether Defendants violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) by creating a substantial burden on Plaintiff's ability to practice his religion. *Id.* at 782–83. The Court of Appeals found that Plaintiff asserted sufficient evidence of a substantial burden on his religion because he sincerely believed that praying in English is required to maintain his spirituality. *Howard*, 372 Fed. Appx. at 782. The Court further found that Defendants did not submit any evidence suggesting that their decision was based on a legitimate correctional goal. *Id.*

## DISCUSSION

**A.    Motion to Strike**

### 1.    Legal Standard

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike is limited to pleadings. *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983). "However, a 'motion to strike' materials that are not part of the pleadings may be regarded as an 'invitation' by the movant 'to consider whether [proffered material] may properly be relied upon.'" *Natural Resources Defense Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1162 (E.D.Cal., 2008) (citing *United States v. Crisp*, 190 F.R.D. 546, 551

(E.D.Cal. 1999)).  Motions to strike are disfavored and infrequently granted. *Germaine Music v. Universal Songs of Polygram*, 275 F.Supp.2d 1288, 1300 (D.Nev.2003).

Local Rule 7–2 (d) provides that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." D. Nev. R. 7–2(d).  However, a district court may not grant a motion for summary judgment simply because the nonmoving party violated a local rule. *Marshall v. Gates*, 44 F.3d 722 (9th Cir. 1995).  The failure to oppose the motion does "not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." *Martinez v. Stanford*, 323 F.3d 1178 (9th Cir. 2003).

The court may, for good cause, grant an extension of time "on a motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).  Excusable neglect has been analyzed pursuant to Fed. R. Civ. P. 60(b)(1). Excusable neglect covers cases of negligence on the part of counsel. *See Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, (1993).  "[T]he determination of whether neglect is excusable is an equitable one that depends on at least four factors: 1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Service*, 231 F.3d 1220 (9th Cir. 2000).

## 2.   Analysis

Plaintiff asks the Court to strike Defendants' Response to Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment. (*See* Mtn to Strike, ECF No. 102.)  Plaintiff filed his Motion for Summary Judgment on November 12, 2010. Defendants' response was due on December 6, 2010.  Instead of filing a response on that date, Defendants filed a motion to stay the case so that the parties could proceed to settlement

conference. (*See* Motion, ECF No. 94.)  The stay was granted, but the Court did not order when the response would be due following the settlement conference. (*See* Order, ECF No. 96.)  The settlement conference was held on January 20, 2011 and proved fruitless.  Plaintiff argues that any response to his motion was therefore due on that day, January 20, 2011. However, Defendants waited until February 15, 2011 to file a response.

Defendants argue that their delay was in good faith.  They assert that because of the stay in the case based on the settlement conference they basically forgot to calendar a due date. They also argue that there is no danger of prejudice or delay to the Plaintiff as no trial date has been set and because the length of the delay was approximately one (1) month in a case that is over three (3) years old.  The Court therefore finds that there was excusable neglect on the part of Defendants in their delay to file a response.

The same is true of Defendants' late filing of their Motion for Summary Judgment (ECF No. 99).  The dispositive motions deadline was set for December 6, 2010 (*see* Order, ECF No. 89), but Defendants did not file their motion until February 15, 2011, for the same reasons they delayed in their filing of their response to Plaintiff's motion.  The Court finds that there was excusable neglect and therefore will not strike the motion.  Accordingly Plaintiff's Motion to Strike (ECF No. 102) is DENIED.

**B.    Motion for Summary Judgment**

**1.    Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  To obtain relief under Rule 56(d), the nonmovant must show "(1) that [he or she] ha[s] set forth in affidavit form the specific facts that [he or she] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998).

### a.     First Amendment

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const. Amend I. The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted); *Shakur v. Schriro*, 514 F.3d 878, 883–84 (9th Cir.2008) (citations omitted); *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir.1987) (per curiam) ("The right to exercise religious practices and beliefs does not terminate at the prison door.") (citations omitted).

For the free exercise clause to apply, an inmate must show that his claim involves a sincere religious belief that is consistent with his faith. *See Shakur*, 514 F.3d at 884–85.

While prisoners retain their First Amendment right to free exercise of religion, it is well

recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Shakur*, 514 F.3d at 884 (internal quotation marks and citations omitted). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also O'Lone,* 482 U.S. at 349; *Shakur*, 514 F.3d at 884; *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995); *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir.1997), *overruled on other grounds in Shakur*, 514 F.3d at 884–85.

As set forth in *Turner v. Safley*, in order to determine whether a policy is reasonably related to a legitimate penological interest the court must examine (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forth to justify the regulation; (2) whether, under the restriction imposed, a prisoner has alternative means for exercising the asserted constitutional right; (3) the impact that accommodating the asserted constitutional right will have on prison staff, inmates, and the allocation of prison resources; and (4) whether the regulation in question is an "exaggerated response" to prison concerns. 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2261–62 (1987).  In evaluating a free exercise claim, courts must give "appropriate deference to prison officials," *O'Lone*, 482 U.S. at 349, because "the judiciary is 'ill-equipped' to deal with the difficult and delicate problems of prison management." *Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989) (citation omitted).

### b.   RLUIPA

RLUIPA provides in relevant part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person

1

2

(1)   is in furtherance of a compelling governmental interest; and

(2)   is the least restrictive means of furthering that compelling governmental interest.

3

4   42 U.S.C. § 2000cc−1(a).  "Religious exercise" is defined as "any exercise of religion, whether

5   or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000c−5(7)(A).

6   To establish a RLUIPA violation, Plaintiff bears the initial burden to prove that Defendants'

7   conduct places a "substantial burden" on his "religious exercise." *Warsoldier v. Woodford*, 418

8   F.3d 989, 994 (9th Cir.2005).  Once Plaintiff establishes a substantial burden, Defendants must

9   prove that the burden both furthers a compelling governmental interest and is the least

10  restrictive means of achieving that interest. *Id.* at 995.  RLUIPA is to be construed broadly in

11  favor of the inmate. *See* 42 U.S.C. § 2000cc−3(g).

12       **2.    First Amendment and RLUPIA Claims**

13       The Court of Appeals has remanded this case because it found that Plaintiff asserted

14  sufficient evidence of a substantial burden on his religion because he sincerely believed that

15  praying in English is required to maintain his spirituality. *Howard*, 372 Fed. Appx. at 782.

16       Count II of Plaintiff's Complaint alleges constitutional violations of the First

17  Amendment by being denied a separate English speaking religious service for Nation of Islam

18  followers. (Complaint, ECF No. 1−1.)  Although not claimed in the Complaint, this Court has

19  previously analyzed Plaintiffs' claims as also stating a claim under RLUIPA.  Plaintiff alleges

20  that the High Desert State Prison (HDSP) cancelled the only English speaking Nation of Islam

21  ("NOI") service and as a result, Plaintiff was forced to attend a service that mocks and ridicules

22  his beliefs. (*Id.*)  Instead, Plaintiff was permitted to attend a weekly service every Friday at

23  HDSP for all inmates of the Muslim faith, including Nation of Islam.

24       Since the filing of the Complaint, Plaintiff was transferred to the Southern Desert

25  Correctional Center ("SDCC"). (*See* Neven Aff. Ex. A attached to MSJ, ECF No. 99−1.)  The

SDCC offers a separate NOI service. (*See id.*)  Thus, any claims for injunctive relief are now moot as Plaintiff has not provided any evidence that he may be transferred back to that facility. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991)(per curiam)(transfer to another prison by prisoner challenging conditions of confinement renders moot any request for injunctive relief absent evidence of reasonable expectation that prisoner will be transferred back.)

Furthermore, Plaintiff cannot recover monetary damages under RLUIPA.  Although the Ninth Circuit has yet to address this issue, the Fourth, Fifth, Seventh, and Eleventh Circuits have concluded that plaintiff cannot assert a RLUIPA claim for damages against defendants in their individual capacity. *See Birdwell v. Cates*, No. CIV S-10-0719 KJM GGH P, 2012 WL 1641964, at *9 (E.D.Cal. May 9, 2012) (citing *Rendelman v. Rouse*, 569 F.3d 182, 187–89 (4th Cir.2009); *Nelson v. Miller*, 570 F.3d 868, 886–89 (7th Cir.2009); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 327–29 (5th Cir.2009); *Smith v. Allen*, 502 F.3d 1255, 1271–75 (11th Cir.2007).  "These Circuits concluded that Congress enacted RLUIPA pursuant to the Spending Clause and did not indicate with sufficient clarity an intent to condition the state's receipt of federal funds on the creation of an individual capacity action for damages; moreover, a contrary reading of the statute would raise serious constitutional concerns about the extent of Congress' authority under the Spending Clause." *Birdwell*, 2012 WL 1641964, at *9. This Court agrees with the reasoning in *Birdwell* and finds that Plaintiff is not entitled to damages against Defendants in their individual capacities under RLUIPA and therefore such claims are dismissed.

Likewise, Plaintiff cannot recover monetary damages against defendants in their official capacities because it is barred by the Eleventh Amendment. *See Sossamon v. Texas*, --- U.S. ---, 131 S.Ct. 1651 (2001)(state officials in their official capacity maintain sovereign immunity from RLUIPA damages actions.)  Accordingly, Plaintiff's claims against Defendants in their official capacities under RLUIPA are dismissed.

Alternatively, if monetary damages or injunctive relief can be granted to Plaintiff, the facts of this case do not support entering judgment in favor of Plaintiff.  Plaintiff argues that canceling the prayer service created a substantial burden on his religion because he sincerely believes that praying in English is required to maintain his spirituality. *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (focusing on the sincerity rather than centrality of a religious belief); *see also* 42 U.S.C. § 2000cc-5(7)(A) (defining "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief").

Defendants argue that while there was only one Muslim service at HDSP, the Jumah service, was not entirely in Arabic, but included only some prayers in Arabic.  In addition to this weekly prayer service, Defendants assert that Plaintiff was allowed various religious items, such as a copy of the Qur'an, a prayer rug, and religious books.  The inmates were also allowed to pray and study in their cells and receive religious publications.  Also, while inmates with individualized or sect-specific beliefs were not given individualized services, they were given accommodations that enable them to express those beliefs in private or with a study group. Plaintiff was also allowed to participate in Ramadan observance and other religious celebrations.  Defendants therefore argue that Plaintiff has not shown that they imposed a substantial burden on his religious practices merely because they previously denied him a separate Nation of Islam service as requested by Plaintiff. *See Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004), cert. denied, 545 U.S. 1104, 125 S.Ct. 2549, (2005) (holding that the prison did not impose a substantial burden on his religious exercise by not accommodating his request to congregate with other members of his faith).

Assuming Plaintiff has met his burden in showing that Defendants have placed a substantial burden on Plaintiff's ability to practice his religion, the burden turns to Defendants to show the regulation is reasonably related to legitimate penological interests to survive Plaintiff's First Amendment claims and that the regulation is the least restrictive means to

advance a compelling governmental interest to survive Plaintiff's RLUIPA claim.  Defendants assert that limiting the number of worship services is reasonably related to the compelling interest of maintaining safety and security of the staff and inmates.  HDSP has limited resources regarding staff, space and time constraints. (Neven Aff. Ex. A attached to MSJ, ECF No. 99–1.)  HDSP has the highest inmate population of any prison within Nevada and it is an intake prison. (*See id.*)  The combination of high inmate turnover as inmates are cycling through and large population creates timing and safety issues.  Defendants explain that HDSP has only one chapel and with such accommodations only one Muslim prayer service can be held on a Friday. (*See id.*)  Multiple services would require more space and more correctional officers to supervise the same. (*See id.*)  Additionally, Defendants assert, there are issues regarding transporting inmates to and from chapel, again requiring more staff. (*See id.*).  They explain that if staff is taken away from other posts, the safety of the institution is in danger. (*See id.*)  Defendants claim that they cannot hire more correctional officers or more chaplains (there is only one Chaplain) based on their current budget crisis. (*See id.*)

Additionally there is only one chapel, which has one large room and three smaller meeting rooms. (*See id.*)  This room must be used for all services.  There are actually different Muslim services based upon custody classification, which would double HDSP's inability to have multiple Muslim services of various custody classifications. (*See id.*)  These services must be supervised because such gatherings have the potential to be used as gang meeting grounds or areas to discuss unlawful issues without close officer supervision.  Having additional services that cannot be properly supervised creates a dangerous situation for HDSP.

Defendants argue that this is the least restrictive means to accommodate different religious beliefs because of the limited number of rooms, chaplains and officers to supervise the services.  Inmates are still allowed to have study groups and pray in their cells in addition to the Friday group service.

Plaintiff argues that Defendants do not have a legitimate, let alone compelling reason to restrict the number of Muslim services to one a week.  Plaintiff argues that his evidence shows that the real reason Defendants do not allow the NOI service to be separate is because they do not recognize NOI as a religion but as a political organization. (*See* Memorandum from Fr. Dave Casaleggio, attached to Response to MSJ at pg. 12, ECF No. 103.)  However, Plaintiff's main complaint is that he was substantially burdened in his ability to practice his religion because the Muslim service is not in English.  The evidence provided by Plaintiff contradicts this, as it states that the Muslim services were mainly in English and only at times were some of the prayers chanted in another language. (*See id.*)

Plaintiff does not argue against Defendants' assertions that NOI shares the same beliefs of Islam.  According to Defendants, the central tenets of all Islamic faiths are the belief in the five pillars of Islam, the Qur'an, and the prophet Muhammad.  Muslims throughout the world, including members of the NOI, affirm their faith in the shahada– "there is no God but Allah and Muhammad is the seal of the prophets"–all Muslims believe that Muhammad is the last "prophet." *See Muhammad v. City of New York Dep't of Corrections*, 904 F. Supp. 161, 168 (S.D.N.Y. 1995).  Like other Muslims, members of the NOI follow the teaching of the Qur'an and believe that it is the word of God. *Id.* at 168.  Member of NOI celebrate the holy month of Ramadan just like other Muslims. *Id.*  Therefore, for the reasons cited above by Defendants, it appears that the general services at HSDP cover the basic teachings of Islam and are nondenominational. (*See* Neven Affidavit.)

The Court finds that Defendants have demonstrated a legitimate penological interest and compelling government interest in holding only one Muslim service, as well as a demonstrating that HDSP has used the least restrictive means in furthering the compelling interest.  Prison security is a compelling government interest. *See Warsoldier v. Woodford*, 418 F.3d 989, 998 (9th Cir. 2005) (citing *Pell v. Procunier*, 417 U.S. 817, 823, 94 S.Ct. 2800 (1974); *May v.*

1  *Baldwin*, 109 F.3d 557, 563 (1997) (noting that security during transfer of inmates is

2  compelling interest)).  Combining services is the best way to ensure that all inmates are able to

3  participate in a religious service that teaches their core beliefs while still ensuring that all

4  inmates and prison officials are safe.  There is limited space at HDSP to hold the services as it

5  is an intake prison with the highest inmate population of any prison within Nevada, and there

6  are budget restraints that do not allow another chapel to be built or an increase in prison

7  officials to supervise more services.  Therefore, having one Muslim service was the least

8  restrictive means to ensure that Plaintiff, as well as other inmates, were and are allowed to

9  practice their religion while still ensuring safety to all inmates and prison officials.

10  ### 3.      Plaintiff's Property Claim

11           In count four of his complaint, Plaintiff alleges that 38 cassette tapes were confiscated

12  from him.  Apparently, Plaintiff had a hearing on September 22, 2006, in which it was

13  determined that 12 of his tapes should be returned to him. (*See* Response to Motion to Dismiss

14  p. 13, ECF No. 26.)  This Court previously ordered Defendants to return the tapes to Plaintiff.

15  (Order 7:13–19, ECF No. 33.)  On appeal to the Ninth Circuit, Defendants had still not returned

16  the tapes and the Court of Appeals remanded the matter to this Court.  Plaintiff's Motion for

17  Summary Judgment does not dispute the previous findings that 12 cassette tapes should be

18  returned to him and he argues that it still has not occurred.

19           Defendants explain that they have lost the tapes. (MSJ 4:25, ECF No. 99.)  Instead of

20  offering to replace the tapes or provide the monetary equivalent so that this matter can be

21  handled efficiently, Defendants argue that this claim should be dismissed and resolved in small

22  claims court.

23           While this Court may not have been the proper place to bring a claim regarding the lost

24  tapes alone, Plaintiff properly invoked this Court's jurisdiction by bringing several other

25  claims.  At this point in the litigation, it would be a waste of judicial resources to dismiss the

matter, especially where Defendants admit to being at fault, and allow another court to expend time and resources on the issue.  Accordingly, the Court finds that Defendants are liable to Plaintiff for the monetary value of the tapes.

The 38 lost cassette tapes consist of 15 "religious" tapes, 2 "legal" tapes, and 21 "musical" tapes. (*See* Response to Motion to Dismiss at pg. 12.)  After the September 22, 2006 hearing when it was determined that 12 tapes should be returned to Plaintiff, Plaintiff filed a first level grievance seeking the return of the "legal and religious" tapes. (*See* Informal Grievance, Ex. D attached to Response to Motion to Dismiss.)  There is no indication whether or not these tapes were homemade or commercial and no monetary value has been attached to them.  Therefore, the Court finds that the fair amount to award in this case is $10 per tape, or $120 in total.  Plaintiff will also be awarded any costs specifically associated with this cause of action to recover his tapes.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff Reginald C. Howard's Motion to Strike Defendants' Motion for Summary Judgment and Defendants' Response to Plaintiff's Motion for Summary Judgment (ECF No. 102) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 90) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants Howard Skolnik, Dwight Neven, James Henson, Isidro Baca, Julio Calderin, Dwayne Deal, and Ryan Pappas' Motion for Summary Judgment (ECF No. 99) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Summary Judgment is **GRANTED** in favor of Plaintiff on his Fourth Cause of Action regarding his lost property.  Defendants are ordered to pay Plaintiff $120.00 in damages, as well as the costs associated with this cause of action to recover his tapes.  **Plaintiff shall file his bill of costs as required by Local Rule 54-1**

**following the guidelines of Local Rules 54-2 through 54-15.**

**IT IS FURTHER ORDERED** that Summary Judgment is **GRANTED** in favor of Defendants on Plaintiff's First Amendment and Religious Land Use and Institutionalized Persons Act claims concerning his religious rights.

DATED this 23rd day of August, 2012.

_____
Gloria M. Navarro
United States District Judge