UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| REGINALD C. HOWARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HOWARD SKOLNIK et al., ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:08-cv-00728-GMN-GWF <br><br> **ORDER** |

Pending before the Court is a Motion to File Renewed Motion for Summary Judgment (ECF No. 153)[1] and a Motion for Summary Judgment (ECF No. 154) filed by Defendants Howard Skolnik, Dwight Neven, James Henson, Isidro Baca, Julio Calderin, and Dwayne Deal (collectively, "Defendants"). Plaintiff Reginald C. Howard filed a Response (ECF No. 157), and Defendants filed a Reply (ECF No. 158).

I.      **BACKGROUND**

Plaintiff, Reginald C. Howard, is a convicted felon who is in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed in Southern Desert Correctional Center ("SDCC") in Indian Springs, Nevada. (Proposed Pretrial Order at 2, ECF No. 152). Plaintiff brought this civil rights action in the United States District Court, District of Nevada, on June 19, 2008. (ECF No. 3). His Complaint alleges violations of his First, Eighth, and Fourteenth Amendment rights based on his being forbidden to fast for religious purposes on September 20 and 29, 2007, his being denied a separate English-speaking religious service for

---

[1] Because the Ninth Circuit has held that "district courts have discretion to permit successive motions for summary judgment" and the Court finds the instant Motion for Summary judgment appropriate, the Court grants Defendants' Motion to File Renewed Motion for Summary Judgment (ECF No. 153). *See Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).

1  Nation of Islam followers, his being exposed to second-hand smoke within the prison, and
2  having legal, religious, and musical cassette tapes taken from him. *Id.* Defendants previously
3  filed a Motion to Dismiss or in the alternative Motion for Summary Judgment (ECF No. 23)
4  which was granted by the Honorable Robert C. Jones on January 22, 2009 (ECF No. 33).

5  Plaintiff appealed Judge Jones' Order to the Ninth Circuit Court of Appeals. (ECF No.
6  35). The Court of Appeals upheld part of the summary judgment, but vacated two issues and
7  remanded them back to the Court. *Howard v. Skolnik*, 372 Fed. Appx. 781 (9th Cir. 2010). The
8  two issues remanded were: (1) whether the NDOC must return certain tapes belonging to
9  Plaintiff, and (2) whether Defendants violated the Religious Land Use and Institutionalized
10 Persons Act (RLUIPA) by creating a substantial burden on Plaintiff's ability to practice his
11 religion. *Id.* at 782–83. The Court of Appeals found that Plaintiff asserted sufficient evidence
12 of a substantial burden on his religion because he sincerely believed that praying in English is
13 required to maintain his spirituality. *Id.* at 782. The Court further found that Defendants did not
14 submit any evidence suggesting that their decision was based on a legitimate correctional goal.
15 *Id.*

16 On remand, Plaintiff and Defendants each filed motions for summary judgment. (*See*
17 ECF Nos. 90, 99). The Court held that "Plaintiff's Motion for Summary Judgment (ECF No.
18 90) is GRANTED in part and DENIED in part," and Defendants' "Motion for Summary
19 Judgment (ECF No. 99) is GRANTED in part and DENIED in part." (Order 14:17–21, ECF
20 No. 119). Specifically, the Court granted summary judgment "in favor of Plaintiff on his
21 Fourth Cause of Action regarding his lost property" and ordered Defendants "to pay Plaintiff
22 $120.00 in damages, as well as the costs associated with this cause of action to recover his
23 tapes." (*Id.* 14:22–25). Moreover, the Court granted summary judgment "in favor of
24 Defendants on Plaintiff's First Amendment and Religious Land Use and Institutionalized
25 Persons Act claims concerning his religious rights." (*Id.* 15:2–4).

Plaintiff appealed the Court's Order to the Ninth Circuit Court of Appeals. (ECF No. 120). The Court of Appeals upheld a majority of the summary judgment, but vacated one issue and remanded it back to the Court for further proceedings. *Howard v. Skolnik*, 599 Fed. Appx. 323 (9th Cir. 2015). As to the issue remanded to this Court, the Court of Appeals held that "the district court erred in granting summary judgment on [Plaintiff]'s First Amendment claim for damages" because, "[a]lthough defendants introduced evidence of legitimate penological interests generally, [Plaintiff] created a genuine dispute as to whether [D]efendants' decision to cancel Nation of Islam's religious services, while he was a prisoner at High Desert State Prison, reasonably advanced those penological interests." *Id.* at 324.

## II.      LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.        DISCUSSION**

In the Motion for Summary Judgment, Defendants argue they are entitled to the protections of qualified immunity regarding the decision to cancel the Nation of Islam services at High Desert State Prison. (Mot. Summ. J. 7:1–9:10, ECF No. 154).  "The doctrine of qualified immunity protects government officials 'from civil liability when performing discretionary functions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Analyzing whether a government official is entitled to qualified immunity involves two questions: (1) whether the facts alleged show the official violated a constitutional right; and (2) whether the right was clearly established such that a reasonable government official would know the conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled on other grounds by *Pearson*, 555 U.S. at 236).

The term "clearly established" means that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  The key inquiry is whether the unlawfulness of the act would have been apparent to a reasonable person in the light of preexisting law at the time the act was committed. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Here, Defendants assert that they "are entitled to qualified immunity because at the time of the conduct in question there was no clearly established law that required them to recognize the Nation of Islam as a religion for approved prison activities." (Mot. Summ. J. 7:1–3).

Defendants argue that courts in this district have "previously ruled that neither the Ninth Circuit nor the Supreme Court have expressly found that the Nation of Islam is a recognized religion," and "no reasonable prison official would have known at the time of the conduct in question that a determination not to so recognize the Nation of Islam would violate Plaintiff's constitutional rights." (*Id.* 8:5–6, 9:1–3).

Neither the Ninth Circuit nor the Supreme Court have expressly found that the Nation of Islam is, in fact, a recognized religion. And the Ninth Circuit holds that while "[i]t is impermissible to inquire into the 'truth' of religious doctrines or beliefs … [t]here is no prohibition, however, against ruling whether or not a set of beliefs constitutes a religion when deciding if First Amendment protections apply." *Jones v. Bradley*, 590 F.2d 294, 295 (9th Cir. 1979) (internal citations omitted).

> Although a determination of what is a 'religious' belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses.

*Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1974). "One district court has stated that, although '(t)he task is . . . greatly simplified where an historically established and recognized religion such as Islam, Judaism or Catholicism is involved', a court 'must initially determine whether or not a religion or religious beliefs are actually involved' in a case dealing with a free exercise question." *Jones*, 590 F.2d at 295 n.2 (quoting *Theriault v. Silber*, 391 F. Supp. 578, 580 (W.D. Tex. 1975).

Even if it is determined that the Nation of Islam is, and should be, a recognized religion, that issue had not been addressed in prior case law in this Circuit.  Thus, no reasonable official would have known at the time of the conduct in question that failing to recognize the Nation of Islam as a religion would violate Plaintiff's constitutional rights.  Accordingly, Defendants' Motion for Summary Judgment on qualified immunity grounds is GRANTED.

IV.     **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to File Renewed Motion for Summary Judgment (ECF No. 153) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 154) is **GRANTED**.  Accordingly, summary judgment is granted in favor of Defendants on Plaintiff's remaining First Amendment claim for damages, and this case is hereby closed.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __31__ day of March, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge